IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT H. ROYBAL,              )
                               )
            Plaintiff,         )
                               )
    v.                         )        1:11CV389
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner            )
of Social Security,[1]         )
                               )
            Defendant.         )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Robert H. Roybal, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, respectively. (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 12). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI and alleged a disability onset date of June 15, 2003. (Tr. 186-93.) Upon denial of that application initially (Tr. 63-64, 86-93) and on reconsideration (Tr. 65-66, 96-104), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 105-06). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 15-62.) The ALJ then ruled Plaintiff not disabled within the meaning of the Act. (Tr. 67-81.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 1-7.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2006.

2. [Plaintiff] has not engaged in substantial gainful activity since June 15, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: chronic cholecy[s]titis and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

>   5.   .  .  .  [Plaintiff]  has  the  residual  functional
>   capacity  to  perform  the  full  range  of  light  work  as
>   defined in 20 CFR 404.1567(b) and 416.967(b) except that:
>   [Plaintiff]  need[s]  a  sit/stand  option.  [Plaintiff]  can
>   frequently  reach  in  all  directions  and  can  frequently
>   balance,  stoop,  kneel,  crouch,  and  crawl.  [Plaintiff]  can
>   occasionally  climb  ramps  and  stairs,  but  can  never  climb
>   ladders,  ropes  and  scaffolds.

(Tr. 72-78.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ concluded that Plaintiff could not perform his past relevant work as a restaurant cook, forklift driver, ceramic tile installer, restaurant manager, tool and equipment rental clerk, equipment cleaner and vehicle unloader. (Tr. 78-79.) However, based on the VE's testimony, as well as consideration of Plaintiff's age, education, work experience, and RFC, the ALJ concluded that "jobs [] exist[ed] in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 79-80 (citing 20 C.F.R. § 404.1569, 404.1569(a), 416.969, and 416.969(a)).) Accordingly, the ALJ found Plaintiff to suffer from no "disability," as defined in the Act, at any time from the alleged onset date through the date of decision. (Tr. 81.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

medical condition." <u>Hall</u>, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points forecloses a benefits award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

_____

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

is not sufficiently severe to equal or exceed a listed impairment,

the ALJ must assess the claimant's residual functional capacity

('RFC')."  Id. at 179.[4]  Step four then requires the ALJ to assess

whether, based on that RFC, the claimant can "perform past relevant

work"; if so, the claimant does not qualify as disabled.  Id. at

179-80.  However, if the claimant establishes an inability to

return to prior work, the analysis proceeds to the fifth step,

whereupon the ALJ must decide "whether the claimant is able to

perform other work considering both [the claimant's RFC] and [the

claimant's] vocational capabilities (age, education, and past work

experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.

If, at this step, the government cannot carry its "evidentiary

burden of proving that [the claimant] remains able to work other

jobs available in the community," the claimant qualifies as

disabled.  Hines, 453 F.3d at 567.[5]

_____

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a
(continued...)

## Assignments of Error

According to Plaintiff, substantial evidence fails to support the ALJ's findings at steps two, three, and four, and/or the ALJ misapplied the law at those steps. (Docket Entry 11 at 4-12.) Specifically, Plaintiff asserts the ALJ erred by: (1) improperly evaluating Plaintiff's credibility and the medical record resulting in an RFC finding not supported by substantial evidence (and, by extension, wrongful resolution of step five) (<u>id.</u> at 4-7); (2) not finding Plaintiff's shoulder pain and morbid obesity to constitute severe impairments at step two and not considering those impairments when assessing Plaintiff's RFC (again, causing error at step five) (<u>id.</u> at 7-10); and (3) failing to find at step three that Plaintiff's degenerative disc disease met the criteria of Listing 1.04A (<u>id.</u> at 10-12). Defendant contends otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 13 at 4-12.)

## 1. Plaintiff's Credibility

Plaintiff first contends that the ALJ "improperly evaluated [Plaintiff's] credibility and the medical record which resulted in an RFC finding which is not supported by substantial evidence." (Docket Entry 11 at 4.) According to Plaintiff, the ALJ's

---

[5](...continued)
claimant on step three does not terminate the analysis. <u>See, e.g.,</u> <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

credibility analysis fails to comport with the requirements of Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u> ("SSR 96-7p"), 1996 WL 374186 (July 2, 1996), in two respects: (1) the ALJ found Plaintiff's symptoms "not credible to the extent that they are not inconsistent with [the ALJ's] [RFC] assessment," while "mak[ing] no attempt to describe exactly why she feels that [Plaintiff] is not credible" (Docket Entry 11 at 4 (citing Tr. 78)); and (2) the ALJ did not consider Plaintiff's "persistent efforts to obtain pain relief" at hospitals and free clinics (<u>id.</u> at 5). Plaintiff argues that the ALJ's "[f]ailure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true." (<u>Id.</u> at 6 (citing <u>Wilson v. Barnhardt</u>, 284 F.3d 1219, 1225 (11th Cir. 2002)).) Finally, Plaintiff complains that the ALJ improperly limited her discussion of the medical evidence to one visit with Dr. Huey Chu, who evaluated Plaintiff post-operatively following a cholecystectomy in May 2010. (<u>Id.</u> at 5-6 (citing Tr. 78, 574-75).) Plaintiff maintains that the ALJ "grossly distort[ed] this 'opinion' evidence," because Dr. Chu's assessment reflects only Plaintiff's post-operative course in 2010 and does not undermine his symptomatology during the "nearly seven years prior to [the]

surgery" when he contends he could not work. (Id.) These assignments of error fall short.

SSR 96-7p, as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Id. at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that his statements about the degree of his symptoms lacked credibility in

so far as he claimed a level of physical impairment that would prevent him from performing a range of light work. (Tr. 78.) In particular, the ALJ noted the following:

> [Plaintiff] testified that his average pain on an average day is a five on a scale of one to ten when he is taking his medication. [Plaintiff] testified that he drives to the grocery store or to visit his father "maybe four to five times per week." [Plaintiff] testified that the furthest distance that he drives is to visit his father, which is approximately twelve miles, but that he has driven approximately sixty miles once every one to two months to visit his mother, most recently one or two months ago. [Plaintiff] testified that with regard to his back, he attends a free care clinic and was unable to do water exercises as suggested because there was no such facility available. [Plaintiff] testified that when he is not in pain, he does do land exercises, but that he has not done any such exercises in the past three months due to pain in his shoulders.

> . . .

> In terms of [Plaintiff's] alleged degenerative disc disease, [Plaintiff] testified that he spends most of his days in the recliner with his feet up. He testified that lying on his bed with a pillow between his legs relieves the pressure on his back. He testified that he can sit for approximately thirty minutes before he has to change positions and that he can walk or stand for approximately fifteen minutes before he has to stop and sit down.

> With regard to the opinion evidence, Dr. Chu assessed [Plaintiff] with cholelithiasis in his office visit notes dated May 11, 2010, but stated that [Plaintiff] is "doing very well" and "may resume usual activities." Dr. Chu noted that [Plaintiff's] pain was a "2" on a scale of "1-10" and also included [Plaintiff's] past medical history of "lumbar disc degeneration." I afford Dr. Chu's opinion great weight a[s] it is based on his view of the progressions of [Plaintiff's] impairments over several visits as [Plaintiff's] treating physician and is based on his review of objective medical testing.

(Tr. 77-78 (parenthetical numbers and hearing transcript references omitted).) Notably, the ALJ gave "little weight" to the opinions of the state consultative physicians who both found that Plaintiff remained capable of a range of _medium_ work, remarking that she felt those opinions did not adequately account for limitations caused by Plaintiff's cholecystitis and degenerative disc disease. (Tr. 78; _see also_ Tr. 376-83, 398-405.)

Turning to the allegations that the ALJ's credibility evaluation violated SSR 96-7p, Plaintiff's contention that the ALJ failed to give _any_ reasons for discrediting Plaintiff's subjective complaints lacks merit, because the ALJ, as noted above, did provide a rationale for finding Plaintiff's testimony not fully credible, e.g., that she credited the opinion of Plaintiff's treating physician, Dr. Chu, that Plaintiff was "doing very well" and could resume his "usual activities." (_Id._ (citing Tr. 575).) In addition, the ALJ described some of the activities of daily living which Plaintiff testified he continued to do despite his alleged disability, including driving on a regular basis and grocery shopping. (Tr. 77-78.) As noted above, the _Craig_ test requires ALJs to consider a claimant's daily activities in conjunction with evaluation of subjective complaints. The ALJ accurately described Dr. Chu's opinions and Plaintiff's testimony, and Plaintiff makes no argument to the contrary. Thus, the ALJ's

reasons for not fully crediting Plaintiff's subjective complaints satisfy <u>Craig</u> and SSR 96-7p.

Second, although Plaintiff claims the ALJ violated SSR 96-7p by neglecting to consider Plaintiff's attempts to obtain pain relief at hospitals and free clinics, the ALJ's decision reflects consideration of numerous diagnostic studies performed at Moore Regional Hospital regarding Plaintiff's degenerative disc disease. (Tr. 73; <u>see also</u> Tr. 287, 289, 292.)  Moreover, the ALJ considered Plaintiff's efforts to relieve his symptoms from esophageal reflux, hypertension, hypercholesterolemia, and hyperthyroidism at the Moore Free Care Clinic (<u>see</u> Tr. 73 (citing Exhibit 7F, records from Moore Free Care Clinic)) and she expressly noted Plaintiff's hearing testimony that he obtains cortisone shots in his shoulder twice a year (Tr. 73; <u>see also</u> Tr. 32).  It matters not that the ALJ discussed those items as part of her evaluation at steps two and three of the SEP rather than as part of the credibility analysis, because the substantial evidence test does not require the ALJ to rehash the same medical evidence at latter stages of the SEP.  <u>See</u> Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (concluding that, despite ALJ's "cursory" explanation at step three, ALJ's analysis at other steps sustained step three determination); McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately

13

supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis). The ALJ adequately considered Plaintiff's attempts to seek pain relief in compliance with SSR 96-7p.

Finally, Plaintiff's challenge to the ALJ's reliance on the opinions of Dr. Chu in discrediting Plaintiff's credibility fails for two reasons. First, the ALJ properly relied on Dr. Chu's opinions, as Dr. Chu treated Plaintiff for one of the two severe impairments the ALJ found to exist (cholecystitis) and indicated his awareness of Plaintiff's other severe impairment by noting a past medical history of "lumbar disc degeneration." (Tr. 574.) Second, as discussed above, the ALJ detailed a considerable amount of the medical evidence of record in her analyses at steps two and three of the SEP, including x-rays showing only mild degenerative changes in Plaintiff's cervical, thoracic, and lumbar spines, negative bilateral shoulder x-rays, and a negative cholangiogram. (Tr. 72-77.) Significantly, the ALJ discredited the opinion evidence from the state agency consultants who had found Plaintiff capable of a range of medium work (Tr. 78), and no other physician of record submitted an opinion regarding Plaintiff's ability to

14

perform work-related activities.  The ALJ did not err by relying on Dr. Chu's opinion.

In sum, the ALJ's credibility analysis in this case meets the substantial evidence test and does not contain reversible error.

## 2. Severe Impairments

According to Plaintiff, the ALJ also erred by failing to identify Plaintiff's shoulder pain and morbid obesity as severe impairments and to include any limitations for those impairments in the RFC.  (Docket Entry 11 at 7-10.)  In support of this argument, Plaintiff points to medical records showing diagnoses of rotator cuff "tenderness" and degenerative joint disease in his left shoulder and limited range of motion and weakness in his left shoulder on one examination.  (Id. at 8 (citing Tr. 323-24, 331).)  Plaintiff also asserts that the ALJ failed to assess his pain during the "six to eight months" of the year when his cortisone injections no longer reduce his shoulder pain and that the ALJ erroneously "stated that [Plaintiff] did not suffer from arthritis."  (Id.)  With regard to his obesity, Plaintiff argues that his Body Mass Index ("BMI"), which categorizes his obesity as "morbid," demonstrates that his obesity constitutes a severe impairment.  (Id.)  Plaintiff finally contends that the ALJ "must consider limitations and the restrictions imposed by all of an individuals's impairments, even those that are not severe" and thus erred by failing to engage in the function-by-function narrative

required by Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u> ("SSR 96-8p"), 1996 WL 374184 (July 2, 1996), when determining Plaintiff's RFC. (<u>Id.</u> at 9.) These contentions lack merit.

An impairment qualifies as "not severe" if it constitutes only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling 96-3p, <u>Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe</u> ("SSR 96-3p"), 1996 WL 374181, at *1. Applicable regulations further provide that "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

> (2) Capacities for seeing, hearing, and speaking;

> (3) Understanding, carrying out, and remembering simple instructions;

> (4) Use of judgment;

> (5) Responding appropriately to supervision, co-workers and usual work situations; and

> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Plaintiff bears the burden of showing severity at step two. See <u>Hunter</u>, 993 F.2d at 35 ("Through the fourth step, the burden of

production and proof is on the claimant."). Unless obviously slight, insignificant, or meaningless, limitation in one of the above-cited areas due to an impairment generally leads to recognition of that impairment as severe. See Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984). Plaintiff, however, must support any showing of severity with relevant medical evidence:

> A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).
>
> The determination at step two is based on medical factors alone. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a). A claimant's statements regarding the severity of an impairment is [sic] not sufficient. Adame v. Apfel, 2000 WL 422341 at *3-4 (D. Kan. March 20, 2000); Flint v. Sullivan, 743 F. Supp. 777, 782 (D. Kan. 1990).

Rivas v. Barnhart, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan. Aug. 16, 2006) (unpublished).

In this case, although the record reflects Plaintiff's self-reported complaints of shoulder pain beginning in July 2008 (see, e.g., Tr. 324, 326, 331, 333, 337, 549), "[t]he determination at step two is based on medical factors alone." Rivas, 2006 WL 4046153, at *4 (emphasis added). The medical evidence falls short of a level that would have required the ALJ to find Plaintiff's shoulder pain severe. X-rays of Plaintiff's shoulders revealed no abnormality (Tr. 290-91) and no treating physician assessments exist identifying any limitations linked to Plaintiff's shoulder pain. To the contrary, Plaintiff's medical providers assessed Plaintiff as neurologically intact (see, e.g., Tr. 331) and, with one exception on March 19, 2009 (Tr. 324), noted normal strength in his arms (see, e.g., Tr. 337, 550).

Plaintiff's assertion that the ALJ failed to assess his pain during the "six to eight months" of the year when his cortisone injections no longer reduce his shoulder pain misses the mark. After Plaintiff testified that his shoulders "go right back . . . to hurting again" once the cortisone shots wear off, the ALJ asked him whether he had sought any other type of treatment or physical therapy and whether he had any problems gripping. (Tr. 33.) Plaintiff indicated that he had not sought any other treatment for his shoulder pain and did not have problems gripping "most of the

time." (Id.)  The ALJ thus clearly attempted to gauge Plaintiff's degree of limitation from his shoulder pain once the cortisone shots wear off.[6]  Substantial evidence thus supports the ALJ's omission of shoulder pain from the list of Plaintiff's severe impairments.

With respect to Plaintiff's obesity, the ALJ properly noted in her decision that she considered whether his obesity, either alone or in combination with another medically determinable physical or mental impairment, significantly limited his ability to perform basic work activities in accordance with SSR 02-1p, Titles II and XVI: Evaluation of Obesity ("SSR 02-1p"), 2002 WL 34686281 (Sept. 12, 2002).  (Tr. 74.)  The ALJ also correctly noted that Plaintiff "did not testify that his weight has limited his ability to perform work."  (Id.)  Plaintiff testified that a slip and fall injury in 2003 when he worked as a cook injured his "sciatic nerve" landing him "in bed for like over a month, month and a half" and "then that was it" as far as his ability to work.  (Tr. 25.)  Consistent with Plaintiff's testimony that his back pain caused his inability to work rather than obesity, Plaintiff did not list "obesity" as an impairment on his Disability Report at the time of his application

---

[6] Plaintiff's assertion that the ALJ "stated" during the hearing that Plaintiff "did not suffer from arthritis" constitutes a misrepresentation of the record.  The ALJ merely asked Plaintiff's attorney where she could locate the diagnosis of shoulder arthritis in the record, to which the attorney responded, "It's degenerative joint disease, I believe the former diagnosis is."  (Tr. 42.) The ALJ then remarked, "Yes. . . .Okay, thank you."  (Id.)

for benefits in 2009. (Tr. 203.) Substantial evidence thus supports the ALJ's decision to find Plaintiff's obesity a non-severe impairment.

Even if the ALJ should have listed shoulder pain and obesity as a severe impairment, that error does not warrant relief here. Where an ALJ finds at least one severe impairment, any failure to identify more generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). The ALJ here found two severe impairments at step two and proceeded with the SEP. (Tr. 72.) Although Plaintiff claims the ALJ failed to address his shoulder pain and obesity in the RFC in violation of SSR 96-8p (Docket Entry 11 at 9-10),[7]

---

[7] Even assuming the ALJ violated SSR 96-8p's requirement of a function-by-function analysis of all work-related abilities, any such error qualifies as harmless given that substantial evidence supports the ALJ's RFC determination, and in turn, the VE's conclusion that a significant number of jobs exists that Plaintiff could perform. See Robinson v. Astrue, No. 8:11-cv-03375-RMG-JDA, 2013 WL 625583, at *12 (D.S.C. Jan. 23, 2013) (unpublished) (concluding that ALJ's (continued...)

Plaintiff has not identified _any_ limitations the ALJ should have included for either impairment (_id._).  Moreover, the ALJ's RFC adequately dealt with Plaintiff's shoulder pain and obesity (whether classified as severe or not) by restricting him to light work with a sit/stand option and limitations to occasional ramp/stair climbing and frequent (but not constant) reaching, as well as no climbing of ladders, ropes, or scaffolds.  (Tr. 77-78.) Under such circumstances, any alleged improper application of law at step two caused Plaintiff no prejudice (and thus requires no relief).  _See_ _Oldham_, 509 F.3d at 1256-57; _Lewis_, 498 F.3d at 911; _Maziarz_, 837 F.2d at 244; _Lauver_, 2010 WL 1404767, at *4; _Washington_, 698 F. Supp. 2d at 579-80; _Jones_, 2009 WL 455414, at *2.

**3.   Listing 1.04A**

Finally, Plaintiff maintains that the record "conclusively demonstrates" that his lumbar degenerative disc disease meets the criteria of Listing 1.04A pertaining to spinal disorders, 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.04A.  (Docket Entry 11 at 10.)  In support of this argument, Plaintiff points to findings in the medical record that he alleges demonstrate nerve root compression

---

[7](...continued)
failure to make function-by-function assessment under SSR 96-8p represented harmless error where substantial evidence supported RFC determination).

(Tr. 550), neuroanatomic distribution of pain (Tr. 302, 398, 548),[8] limitation of motion of the spine (Tr. 298, 344, 354-55, 547, 548), motor loss (Tr. 323-24, 346, 354-55, 547, 548) accompanied by sensory loss (Tr. 302, 549), and positive straight-leg raising tests (Tr. 298, 302, 348)[9] sufficient to meet the criteria of Listing 1.04A (Docket Entry 11 at 11-12).  Plaintiff faults the ALJ for specifically analyzing the criteria of Listing 1.04C in her decision rather than 1.04A.

Listing 1.04A requires proof that the spinal disorder has "result[ed] in compromise of a nerve root (including the cauda equina) or the spinal cord" and:

> A.    Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

To show that his condition meets a listed impairment, Plaintiff must establish that his impairment "meet[s] *all* of the specified

---

[8] Page 398 is the first page of an RFC determination by a state agency physician and does not reflect any physical findings of neuroanatomic distribution of pain.  (Tr. 398.)  Page 298, however, reflects Plaintiff's visit to Moore Regional Hospital on April 22, 2003, and indicates that Plaintiff reported "low back pain with radiation into the right leg."  (Tr. 298.)

[9] Again, Plaintiff cites an incorrect page for evidence of positive straight leg raising tests.  Page 348 reflects Plaintiff's visit to a physical therapist on May 13, 2008, and does not contain any findings relating to a straight leg raising test.  (Tr. 348.)  By contract, page 548 of the transcript pertains to Plaintiff's visit with a chiropractor on March 24, 2003, and reflects a straight leg raising test positive on the right at 30 degrees.  (Tr. 548.)

medical criteria" that relate to such listing. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).

Here, after discussing the criteria of Listing 1.04A, 1.04B and 1.04C, the ALJ found, in pertinent part, as follows:

> Although the objective medical testing indicated that [Plaintiff] has some dis degeneration, there is no evidence of pseudoclaudication and there is no indication of [Plaintiff's] inability to ambulate effectively. There is nothing in the medical evidence of record to indicate that [Plaintiff] uses an assistive device. The medical evidence of record and hearing testimony does not indicate that [Plaintiff's] limitations meet the criteria of "inability to ambulate effectively." Accordingly, I find [Plaintiff's] impairments fail to meet Listing 1.04, Disorders of the Spine.

(Tr. 76.) Thus, while citing generically to the entire Listing 1.04, the ALJ did limit her specific analysis at step three to Listing 1.04C pertaining to lumbar spinal stenosis.

Although the ALJ's analysis should have contained a specific analysis pursuant to Listing 1.04A due to Plaintiff's diagnosis of degenerative disc disease, any such failure on her part amounts to harmless error where the record convincingly establishes, as here, that Plaintiff's impairment does not meet the criteria of the listing in question. <u>See</u> <u>Robertson v. Colvin</u>, No. 12-cv-03217-MSK, 2014 WL 300997, at *8 (D. Colo. Jan. 28, 2014) (unpublished) (finding ALJ's failure to specifically discuss Listing 1.04 harmless error where record evidence provided "little support" that impairment met listing's criteria); <u>see also</u> <u>Fisher v. Bowen</u>, 869

F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Even assuming the pages cited by Plaintiff contain the objective medical findings required by Listing 1.04A,[10] Plaintiff glosses over the fact that these findings must have existed for a continuous period of 12 months in order to qualify as disabling. See 20 C.F.R. § 404.1525(c)(4). Here, Plaintiff cites to findings of neuroanatomic distribution of pain, limitation of motion, sensory and motor loss, and positive straight leg raising tests during acute flares of back pain in 2003 (Tr. 298, 302, 547, 548) and 2008 (Tr. 344, 354-55) which contain neither any showing of the requisite nerve root compression nor any indication that such acute incidents would remain at listing level severity for at least 12 months. Similarly, Plaintiff relies on an MRI in September 2009 to demonstrate nerve root compression (Tr. 550), but fails to show

---

[10] Several of the pages cited by Plaintiff do not, in fact, provide evidence of the findings required by Listing 1.04A. For example, Plaintiff cites pages 323 and 324 of the transcript as evidence of "motor loss." (Docket Entry 11 at 11.) However, a review of that page reveals that his doctor found weakness in his left shoulder and not in his lower extremities as would concern lumbar degenerative disc disease. (Tr. 323-24.) Similarly, Plaintiff cites page 549 as evidence of "sensory loss" (Docket Entry 11 at 11), but that page reveals only Plaintiff's subjective report of numbness and tingling in his lower extremities (Tr. 549). Indeed, on examination, the doctor noted that Plaintiff had "normal sensation to light touch in bilateral upper and lower extremities." (Tr. 550) The regulations make clear that musculoskeletal listing criteria "must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation: e.g., 'He says that his leg is weak, numb.'" 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.00D.

that, at that point in time, he experienced the other listing criteria on a continuous basis for at least twelve months. Under such circumstances, substantial evidence supports the ALJ's implicit finding that Plaintiff's degenerative disc disease failed to meet the criteria of Listing 1.04A.

## CONCLUSION

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing Judgment of the Commissioner or Remanding the Cause for Rehearing (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 20, 2014